IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**SHANNON ADAMS**,

      Plaintiff,                                No. 3:11-cv-00477-MO

           v.                            OPINION AND ORDER

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security**,

      Defendant.


      **MOSMAN, J.**,

      Shannon Adams challenges the Commissioner's decision denying her claim for Disability

Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. § 405(g). For the following

reasons, the Commissioner's decision is reversed in part and remanded for further proceedings.

## PROCEDURAL BACKGROUND

      On August 7, 2006, Ms. Adams filed applications for DIB and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act. AR 94. These applications

were denied on October 4, 2006, and upon reconsideration on January 18, 2007. *Id.*

Administrative law judge ("ALJ") Charles S. Evans held a hearing on April 1, 2009. *Id.* at 93–94. On April 21, 2009, the ALJ issued his decision finding Ms. Adams was not disabled from the alleged onset date through the date of the ALJ's decision and denying Ms. Adams's s claim. *Id.* at 104. The Appeals Council took separate action on Ms. Adams's DIB and SSI claims by granting review of her SSI claim[1] but denying review of her DIB claim. *Id.* at 105, 113. The Appeals Council's decision to deny Ms. Adams's request for review of her DIB claim made the ALJ's decision the final decision of the Commissioner. *Id.* at 105. Ms. Adams appealed on April 19, 2011.

**THE ALJ'S FINDINGS**

The ALJ made his decision based upon the five-step sequential process established by the Commissioner. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. § 404.1520 (establishing five-step evaluative process for DIB claims). At step one, he found Ms. Adams had not engaged in substantial gainful activity since the alleged onset date of March 21, 2011. AR 96. At step two, the ALJ concluded that Ms. Adams has the following severe impairments: an anxiety disorder, depression, Achilles tendonitis, and osteoarthritis in her knees. *Id.* Continuing to step three, the ALJ concluded Ms. Adams's severe impairments did not meet or medically equal a disorder listed in the Commissioner's regulations. *Id.* at 97. The ALJ next evaluated Ms. Adams's residual functional capacity ("RFC") and found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except during an eight-hour day, she can sit for only one hour at a time and stand or walk for only thirty minutes at a time, provided that she is allowed to periodically alternate sitting and standing to relieve pain or discomfort. Furthermore, the claimant should never use ladders, ropes or scaffolds, and is limited to only occasional kneeling, crouching and crawling. Finally, because of her pain and symptoms of anxiety the claimant's ability to maintain concentration, persistence and pace is reduced to 80 percent of

---

[1] The Appeals Council remanded Ms. Adams's SSI claim to an ALJ for reconsideration. AR 113.

that of a normal person of her age and she should not be required to interact frequently or repetitively with the general public.

*Id.* at 98. At step four, the ALJ found Ms. Adams could not perform any past relevant work. *Id.* at 103. Lastly, at step five, the ALJ asked a Vocational Expert ("VE") whether jobs exist in significant numbers in the national economy for an individual with Ms. Adams's age, education, work experience, and RFC. *Id.* at 104. The VE testified that given all of those factors, Ms. Adams would be able to work as a small products assembler or a cleaner/polisher, which are jobs that exist in significant numbers in the national economy. *Id.* Relying on that testimony, the ALJ concluded Ms. Adams was "not disabled" through the date of the ALJ's decision. *Id.*

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882; *see also Bray*, 554 F.3d at 1222 ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Ms. Adams raises three arguments. First, she argues the ALJ erred because he misstated the medical expert's testimony in his decision. She argues that the misstatement might have changed the result of the ALJ's determination of her RFC and his decisions at steps four and five. Second, Ms. Adams argues the ALJ erred by stating her mental RFC in terms of a percentage, instead of specific functional limitations. Lastly, Ms. Adams argues the ALJ improperly rejected the testimony of her treating psychologist, Dr. Lisa Nikunen.

### I.    <u>Medical Expert's Testimony</u>

#### A.  *ALJ's Misstatement of Medical Expert's Testimony*

The statement at issue was made by the medical expert, Dr. Lawrence Duckler, while testifying at the administrative hearing on April 1, 2009. AR 23, 40. While explaining to the ALJ that Ms. Adams's functional limitations do not meet or medically equal a disorder in the Commissioner's regulations, Dr. Duckler stated, "I'd say mild for daily activities, *moderate* for social relationships, and in spite of what the claimant commented on for concentration and pace, the [psychologist] thought she would have significant impairment, so it would be *moderate to marked* . . . your honor." *Id.* at 43 (emphasis added).

In his decision, the ALJ acknowledged that he adopted Dr. Duckler's opinions but stated that Dr. Duckler testified that Ms. Adams's "mental impairments resulted in only mild restrictions in her activities of daily living, *mild* difficulties in maintaining social functioning, *moderate* difficulties in maintaining concentration, persistence and pace and no episodes of decompensation, which have been of extended duration." *Id.* at 97 (emphasis added).

#### B.  *Effect of ALJ's Misstatement*

The ALJ used Dr. Duckler's testimony at step three to determine whether Ms. Adams's mental impairments meet or medically equals one of the listings in the Commissioner's

4 – OPINION AND ORDER

regulations. Specifically, the ALJ determined that Ms. Adams did not satisfy the "paragraph B" criteria of listings 12.04 and 12.06. *Id.* To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following limitations: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." 20 C.F.R. Part 404, Subpart P, App. 1.

   Although it is clear that the ALJ erred by stating that Dr. Duckler testified that Ms. Adams only had "*mild* difficulties in maintaining social functioning" and "*moderate* difficulties in maintaining concentration, persistence and pace," his error was harmless. Even if the ALJ had correctly quoted Dr. Duckler's testimony, Ms. Adams's mental impairments would still fail to satisfy the "paragraph B" criteria since she would only have one limitation, falling short of the requirement of two limitations. Additionally, Dr. Duckler's testimony that Ms. Adams's "functional limitations aren't that severe in all three of them," AR 43, supports the ALJ's conclusion that Ms. Adams's mental impairments do not meet or medically equal a disorder in the Commissioner's regulations. *Id.* at 97. A review of Dr. Nikunen's treatment records also substantiates the ALJ's conclusion since they fail to indicate any "marked" limitations or episodes of decompensation. *See id.* at 467–502. The burden to show prejudice is on the party claiming error by the administrative agency. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Ms. Adams fails to show any prejudice that resulted from the ALJ's error.

   Ms. Adams also argues that her DIB claim should be remanded because there is confusion as to how the ALJ's misstatement of Dr. Duckler's testimony affected his assessment of her RFC. However, since Ms. Adams does not identify what should have been different about her RFC assessment and how she was prejudiced by the ALJ's findings, she fails to meet her

burden to show prejudice. *Id.* Furthermore, the ALJ's RFC assessment was based on substantial

evidence in the record including the consideration of Ms. Adams's testimony, Dr. Nikunen's

treatment records, and the findings of a medical consultant. *See id*. at 98–103.

Thus, I find Ms. Adams fails to demonstrate any prejudice resulting from the ALJ's error

and that the ALJ's ultimate conclusion was supported by substantial evidence.

## II.    <u>The ALJ Expressed Claimant's Mental RFC in Terms of a Percentage</u>

Ms. Adams's next assertion is that her DIB claim should be remanded because the ALJ

failed to express her mental RFC in terms of specific functional limitations as required by Social

Security Ruling ("SSR") 96-8p. She argues that because her mental RFC was expressed as a

percentage, it improperly forced the VE to make interpretations and medical determinations that

have an effect on the outcome of steps four and five.

"SSRs, according to the governing regulations, 'are binding on all components of the

Social Security Administration' and 'represent precedent final opinions and orders and

statements of policy and interpretations' of the SSA." *Bray*, 554 F.3d at 1124 (quoting 20 C.F.R.

§ 402.35(b)(1)). "SSRs reflect the official interpretation of the [Social Security Administration]

and are entitled to 'some deference' as long as they are consistent with the Social Security Act

and regulations." *Id.* (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)). "SSRs

do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Id.* SSR 96-8p

requires that the RFC be assessed and expressed in terms of specific functional limitations. "An

improper evaluation of the claimant's ability to perform specific work-related functions could

make the difference between a finding of 'disabled' and 'not disabled.'" *Wilhelm v. Astrue*, No.

3:10-CV-1455-BR, 2012 WL 653822, at *3 (D. Or. Feb. 28, 2012) (quotation omitted).

In this case, the ALJ stated that Ms. Adams's "ability to maintain concentration, persistence and pace is reduced to 80 percent of that of a normal person of her age." AR 98. It appears that the ALJ's finding is based on an assumption he expressed while questioning Ms. Adams during the hearing when he declared: "I assume she's got a problem with fatigue and that she's about 80 percent as good as a normal lady her age would be without the fatigue." *Id.* at 48. It is unclear how he reached the conclusion that Ms. Adams's abilities were diminished to 80 percent. I find that the ALJ's statement did not comply with SSR 96-8p, which requires that the RFC be expressed in terms of specific functional limitations.

The ALJ's finding is also unsupported by substantial evidence and is not a harmless error since the VE relied upon it to answer the ALJ's questions regarding steps four and five. *See id.* at 104. By stating Ms. Adams's mental RFC in terms of a percentage instead of specific functional limitations as required by SSR 96-8p, the VE was forced to give his own interpretation of the plaintiff's reduction in functional ability and make a medical determination of what is normal mental functioning for an individual of Ms. Adams's age. A proper evaluation of Ms. Adams's RFC in terms of specific functional limitations may have altered the finding of whether she was disabled or not disabled. *See Wilhelm*, 2012 WL 653822, at *3.

In light of the error by the ALJ, a remand for further administrative proceedings is warranted. Upon remand, the ALJ should reassess Ms. Adams's RFC and express her mental RFC in terms of specific functional limitations as required by SSR-96-8p.

### III.  <u>Treating Psychologist's Opinions</u>

An ALJ may reject a treating doctor's uncontradicted opinion only for "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "The

ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). The ALJ may disregard a treating physician's uncontradicted opinion if it is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes*, 881 F.2d at 751 (quotation omitted). An ALJ may also discount a treating physician's opinions if they are largely based "on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

If the treating physician's opinion is not entitled to "controlling weight," the ALJ should consider several factors to determine what weight the opinion is entitled to. *Orn v. Astrue*, 495 F.3d at 625, 632–33 (9th Cir. 2007). The factors to determine the weight the ALJ should give to a physician's opinion include the length of the treatment relationship and frequency of examination, the amount of evidence that supports the opinion, the consistency of the medical opinion with the record as a whole, and the physician's area of specialty. *Id.* at 631.

In this instance, the ALJ decided not to afford significant weight to Dr. Nikunen's opinion. He cited multiple reasons for his decision including: her opinions were brief and conclusory; her opinions appeared to be based on assessments of impairments outside her area of expertise; her opinions were not supported by medically acceptable clinical or laboratory techniques; and her opinions were unsupported by other substantial evidence in the case. AR 102. The ALJ further explained that Dr. Nikunen's opinions were unsupported by substantial evidence because they were not supported by her clinical notes and also appeared to rely heavily on, and uncritically accept as true, Ms. Adams's subjective reports of her own symptoms and

limitations.[2] *Id.* He also contended that Dr. Nikunen's clinical notes "appear to be more like those of a social worker than a treating medical source" and that she may have "stepped out of her role as an objective treating medical source and has inadvertently assumed the role of advocate." *Id.*

To reach his decision, the ALJ focused on Dr. Nikunen's opinions from several "Work Activity and Release" forms, a Mental Status Report and cover letter, and a questionnaire provided to her by Ms. Adams's attorney. *Id.* at 101–02. The Work Activity & Release forms indicated that Ms. Adams's abilities to participate in activities were severely limited and did not release her for work. *Id.* at 471, 477, 483. The cover letter of the Mental Status Report stated that Ms. Adams's mood fluctuated but were within normal limits, her speech was normal, her thought processes were normal and without any signs of psychotic symptoms, her thought content was frequently focused on current life stressors and chronic pain, she denied suicidal or homicidal ideation, she had some anger impulses, and she denied any current auditory hallucinations. *Id.* at 467. Dr. Nikunen's opinions in the Mental Status Report and questionnaire are similar and generally provide that her symptomatology includes chronic post-traumatic stress disorder ("PTSD") with symptoms of anxiety, irritability, and depression, many of her problems are caused by her chronic pain symptoms, her ability to maintain a steady pace of physical or mental activity is significantly impaired by her anxiety and chronic pain symptoms, and many of her social interaction problems result from her anxiety. *Id.* at 468–70; 503–06.

The ALJ's decision not to "afford significant weight" to Dr. Nikunen's opinions even though she was Ms. Adams's treating psychologist was based on several "clear and convincing reasons that are supported by substantial evidence." *See Bayliss*, 427 F.3d at 1216. Although

---

[2] The ALJ found the reliability of Ms. Adams's subjective complaints to not be very credible. AR 100. He stated, "it suggests that information provided by the claimant concerning her symptoms generally may not be entirely reliable." *Id.*

some of Dr. Nikunen's treatment records do include brief notes regarding social anxiety and PTSD, AR 490, 492, 498, they primarily revolve around the daily stressors in Ms. Adams's life, including conflicts with her friends and family members, parenting issues, and financial stressors. *Id.* at 472–76, 489, 492. Overall, the treatment notes fail to support Dr. Nikunen's findings regarding the severity of Ms. Adams's impairments.

Dr. Nikunen's cover letter also conflicts with the severity of impairments she indicates Ms. Adams is afflicted with since it states that Ms. Adams's mood is within normal limits, her memory is intact, her thought process is normal, and she has no signs of psychotic symptoms. *Id.* at 467. The opinion of Paul Rethinger, PhD, the reviewing medical consultant, also provides support for the ALJ's decision, as he assessed Ms. Adams's records from March 31, 2001, to October 3, 2006, and found that she was depressed but had no severe impairments as a result. *Id.* at 433, 436, 443–45. Since the record supports the reviewing expert's opinion as opposed to Dr. Nikunen's opinions that are "brief and conclusionary in form with little in the way of clinical findings to support [her] conclusion[s]," it was not improper for the ALJ to discount Dr. Nikunen's opinions. *See Magallanes*, 881 F.2d at 750.

Additionally, Dr. Nikunen also appeared to accept and consider Ms. Adams's subjective self-reports regarding her physical pain, AR 473–74, 498, and made assessments of impairments such as arthritis, tendonitis, IBS, and chronic pain that are outside her area of expertise as a psychologist. *Id.* at 469. Dr. Nikunen's assessments of impairments outside her area of expertise and consideration of Ms. Adams's self-reports that the ALJ considered unreliable also support his decision to discount her opinions. *Id*. at 100, 102; *see Tommasetti*, 533 F.3d at 1041.

Thus, I find the ALJ did not err and provided clear and convincing reasons that are supported by substantial evidence for not affording Dr. Nikunen's opinions significant weight.

**CONCLUSION**

Based on the foregoing, the Commissioner's final decision is AFFIRMED IN PART and

REVERSED ANDREMANDED IN PART for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this   10th   day of May, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

11 – OPINION AND ORDER